UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO.: |
| | : | |
| v. | : | |
| | : | |
| YUH FA FISHERY (VANUATU) CO., LTD., | : | 33 U.S.C. § 1908(a) |
| | : | (Knowing Failure to Maintain an Accurate Oil Record Book) |
| DEFENDANT. | : | |
| | : | 33 U.S.C. § 1908(a) |
| | : | (Knowing Failure to Maintain an Accurate Garbage Record Book) |
| | : | |
| | : | 18 U.S.C. § 2 |
| | : | (Aiding and Abetting) |

## INFORMATION

The United States Attorney informs the Court:

At all times material to this Information,

**A.  THE DEFENDANT**

1. Defendant **YUH FA FISHERY (VANUATU) CO., LTD.,** was a company incorporated in the Republic of Vanuatu with an office at No. 8, Beiyi Road, Fishery Harbor, Qian Town, Kaohsiung, Taiwan. Defendant **YUH FA FISHERY (VANUATU) CO., LTD.**, acting through its agents and employees, who were acting within the scope of their agency and employment, owned and operated the fishing vessel *Yuh Fa No. 201* (hereinafter "*F/V Yuh Fa No. 201*").

**B.  THE VESSEL**

1. The *F/V Yuh Fa No. 201* was a 531 gross ton vessel, registered under the flag administration of the Republic of Vanuatu and bearing Vessel Identification Number 1516 and

International Maritime Organization Number 8520032. The *F/V Yuh Fa No. 201* was engaged in international commercial maritime operations and caught and transported fish to a cannery in Pago Pago, American Samoa, and elsewhere.

2. The *F/V YUH FA No. 201* had a "chief engineer" assigned to maintain the vessel's engine room and machinery. The chief engineer had overall responsibility for the operations in the engine room, including the supervision of daily operations, formulation and implementation of engine room procedures, and verification that all systems, including the Oil Water Separator, were functioning properly.

3. The *F/V YUH FA No. 201* had a "master" assigned as the person with overall charge and responsibility for the vessel. The master was responsible for, among other things, shipboard control of garbage and overall management of the vessel's garbage waste management plan.

C. **LEGAL FRAMEWORK**

1. The United States is part of an international regime that regulates discharges of oil and garbage from vessels at sea: the International Convention for the Prevention of Pollution from Ships, as modified by the Protocol of 1978 ("MARPOL"). MARPOL was enacted into United States law by the Act to Prevent Pollution from Ships ("APPS"), 33 U.S.C. §§ 1901, *et seq*. APPS makes it a crime for any person to knowingly violate MARPOL, APPS, or regulations promulgated under APPS. The regulations promulgated under APPS apply to all vessels that operate under the authority of a country other than the United States while in the navigable waters of the United States, or while at a port or terminal under the jurisdiction of the United States as to oil pollution (33 C.F.R. § 151.09(a)(5)), and while in the navigable waters or Exclusive Economic Zone of the United States as to garbage pollution (33 C.F.R. §

151.51(a)(2)). The waters surrounding American Samoa are subject to the jurisdiction of the United States. *See* 48 U.S.C. §§ 1661, 1662, 1704; 33 C.F.R. §§ 2.36 and 2.38. All crimes alleged in this Information took place within the waters of American Samoa, and within the navigable waters and jurisdiction of the United States, but out of the jurisdiction of any particular State or district (**YUH FA's** principle place of business is outside the United States, and it does not have offices located in any State or district). Therefore, pursuant to 18 U.S.C. § 3238, venue is proper in the United States District Court for the District of Columbia.

2. On large commercial vessels, "machinery space bilge water" accumulates in wells in the bilges, the bottommost part of the vessel. Machinery space bilge water consists of water originating from spills and leaks from piping, tanks, other machinery, or from condensation. This water may be contaminated with oil, oil residue, lubrication fluids, and other liquids that leak or drip from engines or pipes and hoses that run throughout the ship. There can be more than one machinery space bilge on a vessel. A "machinery space bilge" as that phrase is used in the regulation means spaces on a ship containing a bilge and machines that use oil and are capable of generating oil waste. In order to maintain bilge wastes at safe levels, the bilges must periodically be emptied. This can be done in one of two ways: (1) machinery space bilge water can be discharged ashore to a waste reception facility; or, (2) it may be pumped over the side of the ship after being processed through a properly functioning Oil Water Separator ("OWS"). Pursuant to MARPOL and APPS, machinery space bilge water may be discharged overboard into the ocean only if it contains 15 parts per million ("ppm") or less concentration of oil. 33 C.F.R. § 151.10. The principal technology used to lower the oil content of oil-contaminated waste is an OWS, which includes an Oil Content Monitor ("OCM") to detect and prevent

concentrations of oil in excess of 15 ppm from being discharged overboard. Sludge waste is generated in the engine room primarily as a result of the purification of fuel and lubrication oils that are used by the main propulsion engine and the electricity generator engines. Pursuant to MARPOL and APPS, sludge can only be disposed of by either: (1) burning the sludge in an incinerator; or (2) discharging the sludge ashore to a waste reception facility.

    3. Consistent with the requirements contained in MARPOL Annex I, the APPS regulations require that each vessel of more than 400 gross tons maintain a record known as an Oil Record Book. In this Oil Record Book, transfers of oil, the disposal of sludge and waste oil, and overboard discharges of bilge water that have accumulated in machinery spaces, must be fully and accurately recorded by the person or persons in charge of the operations. 33 C.F.R. § 151.25(d). The Oil Record Book must also record any emergency, accidental, or other exceptional discharges of oil or oily mixtures. 33 C.F.R. § 151.25(g). The Oil Record Book must be maintained onboard the vessel for not less than three years, and be readily available for inspection by the United States Coast Guard ("U.S. Coast Guard") at all reasonable times. 33 C.F.R. § 151.25 (k).

    4. Consistent with the requirements contained in MARPOL Annex V, APPS regulations require that the master or person in charge of each vessel of more than 400 gross tons maintain a record known as a Garbage Record Book in which the discharge overboard and discharge to shore of garbage must be recorded, including the date and time, volume and, if discharged at sea, the latitude and longitude. 33 C.F.R. § 151.55(a) and (b). Entries in the Garbage Record Book must be made at the time of the operation, certified as correct by the master or person in charge of the ship, maintained on the ship for two years following the operation, and made

available for inspection by the U.S. Coast Guard. 33 C.F.R. § 151.55(f).

5. The U.S. Coast Guard, an agency of the United States Department of Homeland Security, is charged with enforcing the laws of the United States and is empowered under 14 U.S.C. § 89(a), to board vessels and conduct inspections and investigations of potential violations and to determine compliance with MARPOL, APPS, and related regulations. The U.S. Coast Guard can conduct Port State Control Examinations, which involve boarding a vessel and conducting inspections and investigations of potential violations of the law. Failure to comply with international standards, including MARPOL, can form the basis of an order to refuse to allow a vessel to enter port, or to prohibit the vessel from leaving port without remedial action until the U.S. Coast Guard determines that the vessel does not present an unreasonable threat to the marine environment. 33 C.F.R. §§ 151.07(b) and 151.25(b). In conducting their inspections, U.S. Coast Guard personnel rely on the statements of the vessel's crew and documents, including information contained in the Oil Record Book and Garbage Record Book. The U.S. Coast Guard is specifically authorized to examine a vessel's Oil Record Book and Garbage Record Book to determine, among other things, whether the vessel has operable pollution prevention equipment and appropriate procedures, whether it poses any danger to United States ports and waters, a n d whether the vessel discharged any oil or oily mixtures or plastics or other garbage in violation of MARPOL, APPS, or any other applicable federal regulation. 33 C.F.R. §§ 151.23(a)(3) and (c); 151.61(a)-(e).

### D. THE CRIMINAL CHARGES

### COUNT ONE

1. Sections A through C of this Information are specifically incorporated and re-alleged herein.

2. On or about June 1, 2016, within the navigable waters, internal waters, and ports of the United States in the United States territory of American Samoa, the Defendant, **YUH FA FISHERY (VANUATU) CO., LTD.**, did knowingly fail to maintain an accurate Oil Record Book for the *F/V Yuh Fa No. 201* in which all disposals of oil residue, overboard discharges of oil and oily mixtures, and disposals of machinery space bilge water were fully recorded. Specifically, the Defendant maintained and caused to be maintained an Oil Record Book that: (1) failed to account for the disposal and transfer of machinery space bilge water; and (2) failed to account for the disposal and transfer of oil residues (sludge).

**(Knowing Failure to Maintain Accurate Oil Record Book – Act to Prevent Pollution from Ships**, in violation of Title 33, United States Code, Section 1908(a); Title 18, United States Code, Section 2; and Title 33, Code of Federal Regulations, Section 151.25)

### COUNT TWO

1. Sections A through C of this Information are specifically incorporated and re-alleged herein.

2. On or about June 1, 2016, within the navigable waters, internal waters, and ports of the United States in the United States territory of American Samoa, the Defendant, **YUH FA FISHERY (VANUATU) CO., LTD.**, did knowingly fail to maintain an accurate Garbage Record

6

Book for the *F/V Yuh Fa No. 201* in which all discharges of garbage overboard, discharges to another ship, discharges to a reception facility, discharges into the sea, and incineration onboard the ship were recorded. Specifically, the Defendant failed to maintain a Garbage Record Book that accounted for the disposal and discharge of the ship's garbage.

**(Knowing Failure to Maintain Accurate Garbage Record Book – Act to Prevent Pollution from Ships**, in violation of Title 33, United States Code, Section 1908(a); Title 18, United States Code, Section 2; and Title 33, Code of Federal Regulations, Section 151.55)

Respectfully submitted,

JEFFREY H. WOOD
Acting Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

_____
Stephen Da Ponte, FL State Bar No. 58454
Trial Attorney
U.S. Department of Justice
Environmental Crimes Section
601 D Street NW, Suite 2120
Washington, DC 20530
(202) 305-2729
Stephen.daponte@usdoj.gov

CHANNING D. PHILLIPS
United States Attorney

_____
Frederick Yette, D.C. Bar 385391
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-7733
frederick.yette@usdoj.gov